STUCKY, Judge,
with whom BAKER, Judge, joins (dissenting):
I disagree with the majority’s application of the law of the case doctrine in this ease. I *79 further do not believe that the alleged error was prejudicial. Therefore, I respectfully dissent.
I.
The United States Navy-Marine Corps Court of Criminal Appeals (CCA) concluded that the military judge erred by barring Appellant from cross-examining the prosecutrix, Seaman ARM. United States v. Savala, No. 200800818, 2010 CCA LEXIS 9, 2010 WL 317687 (N.M.Ct.Crim.App. Jan. 28, 2010) (unpublished). Nevertheless, the CCA held that the error was harmless beyond a reasonable doubt and affirmed Appellant’s conviction for rape. 2010 LEXIS 9, at *17-*18, 2010 WL 317687, at *6-*7. The Government did not appeal the CCA’s finding of error but asserted as much in its reply to Appellant’s appeal. The majority applies the law of the case doctrine to bar consideration of this issue. United States v. Savala, 70 M.J. at 76-77 (C.A.A.F.2011).
The law of the ease doctrine holds “that a decision rendered in a former appeal of a case is binding in a later appeal.” Black’s Law Dictionary 966 (9th ed. 2009). The Supreme Court has made clear that just as the prevailing party at trial may assert on appeal any ground in support of a judgment,
whether or not that ground was relied upon or even considered by the trial court[,] .... [it] is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.
Dandridge v. Williams, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) (quotation marks and citations omitted); accord Schiro v. Farley, 510 U.S. 222, 228-29, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994) (“recogniz[ing] that the State, as respondent, is entitled to rely on any legal argument in support of the judgment below”).
This interpretation of the law of the case doctrine is logical. It makes no sense to expect a party that prevails in a lower court to appeal the judgment of that court. Such a requirement would waste valuable attorney and judicial resources. While I agree with the majority that the door was opened to cross-examination of Seaman ARM, I would hold that the Government was not barred by the law of the case doctrine from contesting the issue.
II.
The majority holds that the military judge’s error in prohibiting cross-examination of Seaman ARM on her previous allegation of rape was not harmless beyond a reasonable doubt. I disagree.
“[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one.” Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Constitutional errors involving the denial' of an accused’s opportunity to impeach a witness will result in reversal unless the error was harmless beyond a reasonable doubt. “The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.” Id. at 684, 106 S.Ct. 1431. In determining whether an error was harmless beyond a reasonable doubt, we consider
a host of factors.... including] the importance of the witness’ testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution’s ease.
Id. In applying these factors, the Court’s overarching goal is to determine “whether there is a reasonable possibility that the evidence [or error] complained of might have contributed to the conviction.” United States v. Moran, 65 M.J. 178, 187 (C.A.A.F.2007) (brackets in original) (quotation marks and citation omitted).
*80 III.
In this case, there was considerable testimony that Seaman ARM was drinking and became heavily intoxicated. The evidence also showed that Appellant and his friend, Seaman Townsel, went to one of the same bars as Seaman ARM. Seaman Townsel spoke with Seaman ARM for a few moments at the bar because they had met the previous week. Appellant and Seaman ARM, conversely, had never met and did not meet each other at the bar.
At approximately 4:30 A.M., Seaman ARM left a karaoke bar to return to her barracks room. After leaving the bar, Appellant convinced Seaman Townsel that they should go to Seaman ARM’s room so that Seaman Townsel could speak with her. When they arrived at Seaman ARM’s room, Appellant knocked on the door, which was open. Seaman Townsel convinced Appellant to leave because the room was dark and no one was answering the door. The next morning Seaman ARM filed a report claiming she had been raped the previous night by an unknown assailant. Appellant readily admitted that he had sex with Seaman ARM, but he contended that it was consensual. Seaman ARM testified that it was not.
IV.
Seaman ARM’s testimony was important because she and Appellant were the only witnesses to the sexual acts. Seaman ARM admitted she was intoxicated and awoke to someone having sex with her whom she could not identify. Indeed the majority relies on the victim’s “hazy memory” and “excessive consumption of alcohol” to suggest that her testimony was unreliable, which also tends to diminish the importance of her testimony. Furthermore, Appellant impeached Seaman ARM’s credibility by pointing out that she had lied on military forms and had broken a no-aleohol pact with her fiancé. Other than limiting questions about the previous rape allegation, the military judge permitted Appellant full and free cross-examination of Seaman ARM.
The evidence also corroborated some of Seaman ARM’s testimony. She testified that she did not know Appellant, had not invited him into her room, and had not consented to have sex with him. In accord with Seaman ARM’s testimony, Seaman Townsel and Appellant both testified that Appellant had never met nor spoken with Seaman ARM before the night of the events. As discussed below, Seaman Townsel also disputed Appellant’s unsupported description of meeting Seaman ARM at her room.
The evidence further established that Appellant wanted to contact Seaman ARM after leaving the bar, that he learned the location of her room from Seaman Townsel, and that he knew her door was not latched because it opened when he knocked on it. A Naval Criminal Investigative Service agent later confirmed the fact that Seaman ARM’s door would not properly latch. Furthermore, evidence, including expert testimony, indicated the likelihood that Seaman ARM was still heavily intoxicated at the time of the incident, which would explain her failure to respond to a knock at the door or an unauthorized entrance into her barracks room. The Government was thus able to provide a convincing explanation for how Appellant gained access to Seaman ARM’s room.
As the majority recognizes, “the prosecution presented a strong circumstantial case at trial.” United States v. Savala, 70 M.J. at 77. Although the strength of the ease may depend on whether the evidence is circumstantial or direct, a strong case is a strong case regardless of the nature of the evidence. Indeed, trial counsel provided a coherent and convincing picture of Appellant’s criminal actions.
The strength of the Government’s case becomes more apparent when contrasted with the weakness of Appellant’s case. According to Appellant’s testimony, he knocked on Seaman ARM’s door at some time after five in the morning with Seaman Townsel nearby. Despite being quite intoxicated, Seaman ARM supposedly came to the door, met Appellant for the first time, and told him that although she was not interested in Seaman Townsel, whom Appellant was attempting to speak highly of, she thought “[Appellant] was cute” and wondered why “[he] *81 wouldn’t talk to her.” According to Appellant, he and Seaman ARM agreed he would return after he went back to his room to freshen up. When he returned, the two had a short conversation, which, according to Appellant, resulted in consensual sex.
Regardless of the plausibility of the story standing alone, Appellant’s defense is weak because it is both (1) unsupported by the evidence and, more importantly, (2) contradicted by testimony from his friend Seaman Townsel, who testified that they did not see Seaman ARM at her room and Appellant never spoke with Seaman ARM in his presence. It is uncontradicted that Seaman Townsel was present and in a location where he would have heard any conversation had one occurred.
It is Seaman Townsel’s testimony that is critical in assessing prejudice, as his testimony was the most damaging to Appellant’s case. In finding prejudicial error, the majority relies on the fact that Seaman Townsel’s credibility had been called into question at trial based on his initial statements to investigators concerning the incident: He claimed he saw an unidentified person enter Seaman ARM’s room. Certainly the fact that he changed his story is relevant to Seaman Townsel’s credibility. But it might also be indicative of someone seeking to deflect attention from himself or a friend. The members had an opportunity to observe Seaman Townsel and consider his testimony in light of all the other evidence before the court, including the fact that Appellant admitted having sex with Seaman ARM.
Finally, cross-examination on the prior Virginia Beach incident would not have bolstered Appellant’s attack on Seaman ARM’s credibility. In that incident, Seaman ARM awoke from a night of partying and could not remember what happened. The circumstances suggested that someone had sexual intercourse with her. She reported the incident as a rape. When confronted with the alleged perpetrator’s version of events that it was consensual, Seaman ARM admitted that the alleged perpetrator’s version might be true, but she could not remember. That is not a false statement. Without something more in the record, I fail to see how the majority can conclude that the members could have found anything false about the prior allegation. Under the circumstances, evidence of the previous allegation would, if anything, have bolstered her credibility with the court members: When confronted with the evidence, she was able to evaluate the facts and conclude that she may have been wrong in her assessment of the situation. The excluded evidence would not have “tipped the credibility balance in Appellant’s favor.” United States v. Moss, 63 M.J. 233, 239 (C.A.A.F.2006).
Regardless of whether the military judge erred in not permitting Appellant to cross-examine Seaman ARM about her previous rape allegation, such evidence would not have bolstered his anemic defense. I am confident that even if “the damaging potential of the cross-examination were fully realized,” it would not have affected Appellant’s conviction, and, therefore, it was harmless beyond a reasonable doubt. See Van Arsdall, 475 at 684, 106 S.Ct. 1431.
V.
I would affirm the judgment of the United States Navy-Marine Corps Court of Criminal Appeals.